UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BERLINDA F. RIVERS,

    Plaintiff,

v.                                            Case No. 3:16cv333-MCR-CJK

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This case is before the court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of Social Security ("Commissioner") denying Berlinda F. Rivers' application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-83.  The case was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and N.D. Fla. Loc. R. 72.2(D).  Upon review of the record before the court, I conclude the findings of fact and determinations of the Commissioner are supported by substantial evidence.  The decision of the Commissioner, therefore, should be affirmed and the application for SSI denied.

---

[1] Nancy A. Berryhill succeeded Carolyn W. Colvin as acting Commissioner of Social Security and is automatically substituted for Colvin as the defendant.  Fed. R. Civ. P. 25(d).

## ISSUES ON REVIEW

Ms. Rivers, who will be referred to as claimant, plaintiff, or by name, raises 2 issues. She claims the Administrative Law Judge ("ALJ") erred by: (1) ignoring a portion of Dr. Schilling's and Dr. Clay's opinions; and (2) not giving adequate weight to the opinions of 2 treating providers. (Doc. 15).

## PROCEDURAL HISTORY

On January 7, 2013, Ms. Rivers filed an application for SSI, claiming disability beginning January 1, 1991, due to both physical and mental impairments. T. 109-10, 246.[2] The Commissioner denied the application initially and on reconsideration. T. 122, 139. The ALJ conducted a hearing on July 15, 2014, and a supplemental hearing on November 20, 2014. T. 36-90. After the hearings, the ALJ found claimant was not disabled under the Act. T. 17-35. The Appeals Council denied a request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner. T. 1-6. The determination of the Commissioner is now before the court for review.

## FINDINGS OF THE ALJ

In her written decision, the ALJ made a number of findings relative to the issues raised in this appeal:

---

[2] The administrative record filed by the Commissioner consists of 21 volumes (docs. 12-2 through 12-22) and has 1176 consecutively numbered pages. References to the record will be by "T.," for transcript, followed by the page number.

- Claimant has the following severe impairments: asthma and upper respiratory disorder, arthralgia and osteoarthritis, schizophrenia, affective mood disorder, hypertension, and substance abuse.  T. 22.

- Claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) except claimant should not engage in overhead reaching bilaterally.  Claimant is able to attend and concentrate for 2 hours at a time.  Claimant is able to adapt to occasional changes in workplace settings.  Claimant is able to understand, remember, and carry out short, simple work instructions.  Any time off task can be accommodated by normal breaks.  Claimant should not be required to work with the general public.  Claimant is able to have occasional contact with coworkers and supervisors.  Claimant should have only occasional exposure to environmental pollutants such as pollen, smoke, fumes, gases, and chemicals.  T. 24.

- Claimant has no past relevant work.  T. 28.

- Considering claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that claimant can perform.  T. 28.

- Claimant has not been under a disability, as defined in the Act, from January 7, 2013, through January 7, 2015.  T. 29.

## STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986)

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also*

*Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)). The reviewing court, however, may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985).

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 416.920(a)(4), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least 12 months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent her from performing her past relevant work, she is not disabled.[3]

5. Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates the claimant's RFC and vocational factors, she is not disabled.

---

[3] "[C]laimant bears the initial burden of establishing a severe impairment that keeps [her] from performing [her] past work." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

# FACT BACKGROUND AND MEDICAL HISTORY[4]

At the hearings before the ALJ, Ms. Rivers offered testimony as to her health and daily activities. She was born on July 6, 1965, and has a limited education. T. 43, 109. She claims disability due to an injury to her right arm, a problem with her right leg, asthma, an enlarged heart, schizophrenia, high blood pressure, peptic ulcers, and an ankle sprain. T. 109-10.

Claimant testified she experiences breathing problems that are exacerbated by exposure to dust, pollen, and fumes.[5] T. 43-44. She becomes short of breath after walking about a block. T. 45. She has a prescription for a nebulizer but is unable to afford it. T. 43. She can sit for 30 minutes and stand for 15 minutes at a time. T. 44-45. Plaintiff indicated she experienced pain every day and rated the pain as a 9 on a scale from 1 to 10. T. 45-46. She can lift a gallon of milk for a short time but must use both hands. T. 46. Due to fatigue, she lays down 3 to 4 times a day for 30

---

[4] The recitation of medical and historical facts of this case, as set out below, is based on the court's independent review of the record. The facts below, where not derived from the medical records, are based largely, if not entirely, on plaintiff's testimony in that regard. Although intended to be thorough and to provide an overview of the claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as necessary in the Analysis section.

[5] The ALJ found "claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely credible" and claimant does not challenge that finding in this appeal. T. 25; *see United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) ("[A] party seeking to raise a claim or issue on appeal must plainly and prominently so indicate. Otherwise, the issue—even if properly preserved at trial—will be considered abandoned.").

minutes to an hour.  T. 46-47.  Her family helps her get dressed and grooms her hair. T. 47.

As part of the disability application process, psychologist Robert F. Schilling, Ph.D., reviewed plaintiff's medical records and offered an opinion as to the limiting effects of her mental impairments on February 27, 2013.  T. 114-15.  Dr. Schilling concluded claimant had: (1) mild restriction of activities of daily living; (2) moderate difficulties in maintaining social functioning and concentration, persistence, or pace; and (3) no episodes of decompensation.  T. 114-15.  When asked to explain claimant's sustained concentration and persistence limitations, Dr. Schilling stated:

> The claimant can sustain concentration, persistence and pace for very short and simple tasks and [is] able to maintain attention/concentration for 2-hour segments.  They can perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  They have the ability to sustain an ordinary routine without special supervision.  They maintain the ability to work in coordination with or in proximity to others without being distracted by them.  They can make simple work-related decisions.  They will experience mild/moderate difficulties maintaining the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

T. 118.  On March 18, 2013, psychologist David Clay, Ph.D., reviewed the medical evidence and concurred with the above-described conclusions of Dr. Schilling.  T. 129-30, 133-35.

An unidentified individual at the Lakeview Center mental health clinic completed a Treating Source Mental Status Report on March 18, 2013.  T. 684-86.

The Report listed claimant's diagnosis as "schizophrenia, undifferentiated type" and indicated: (1) her mood was "dysphoric" and her affect was "mood congruent"; (2) her thought process was "goal directed & organized"; (3) her thought content revealed "no overt psychotic symptoms"; (4) her concentration was "good"; (5) she was "alert & oriented times three"; (6) her memory (immediate, recent, and remote) was "good"; (7) she denied hallucinations and perceptual disturbances; (8) she exhibited no abnormal behaviors; (9) she was competent to independently manage her own funds/benefits. T. 684-86. The Report also stated: "Patient has fair cognitive ability. The patient's mood disability may have [a] negative effect on social responses & activities of daily living. . . . The patient's mood disability may enable her from completing a normal work week despite medication management." T. 686.

On December 26, 2013, Leticia Javier, ARNP, completed a Physical Capacities Evaluation form indicating claimant could: (1) lift and/or carry 10 pounds occasionally to 5 pounds frequently; and (2) sit for 4 hours and stand/walk for 4 hours in an 8-hour workday. T. 831. Nurse Javier asserted plaintiff would miss 4 days of work per month due to her impairments. T. 831. When asked to "explain and briefly describe the degree and basis for any restriction" indicated on the form, the nurse responded: (1) "[history] of [cerebrovascular accident with] left side

weakness but mild/fully functional"; (2) "asthma [with chronic obstructive pulmonary disease] dyspnea [with] exertion"; and (3) allergies.  T. 831.

## ANALYSIS

Ms. Rivers first argues the ALJ erred by failing to explain why a portion of Dr. Schilling's and Dr. Clay's findings were omitted from the RFC determination. (Doc. 15, p. 4-9).  The ALJ gave these doctors' opinions "great weight, in that they found the claimant only has mild to moderate mental limitations," because the opinions were "consistent with the limited mental health treatment notes that show the claimant's condition is controlled with medication."  T. 26.  Plaintiff, however, asserts the ALJ ignored the doctors' findings concerning plaintiff's "mild/moderate difficulties maintaining the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  T. 118, 134.  To account for these "mild/moderate difficulties," claimant suggests the RFC should have allowed for additional work breaks and/or absences.  (Doc. 15, p. 6, 9).

The ALJ's evaluation of Dr. Schilling's and Dr. Clay's opinions—and the incorporation of their findings into the RFC—is supported by substantial evidence. Plaintiff's argument fails to consider the entirety of the doctors' opinions.  *See* 20 C.F.R. § 416.920(e) (The ALJ "will assess and make a finding about your [RFC] based on all the relevant medical and other evidence in your case record[.]").

Although both doctors noted claimant would have "mild/moderate difficulties" completing "a normal workday and workweek without interruptions" and performing "at a consistent pace without an unreasonable number and length of rest periods," T. 118, 134, this umbrella statement does not define the extent of the difficulties or indicate their impact on plaintiff's ability to work. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of these impairments does not reveal the extent to which they limit [the] ability to work or undermine the ALJ's determination in that regard."). Drs. Schilling and Clay *specifically* found claimant: (1) "can sustain concentration, persistence and pace for very short and simple tasks and [is] able to maintain attention/concentration for 2-hour segments"; (2) "can perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; (3) has "the ability to sustain an ordinary routine without special supervision"; (4) maintains "the ability to work in coordination with or in proximity to others without being distracted by them"; and (5) "can make simple work-related decisions." T. 118, 134. The doctors' specific findings support the ALJ's RFC determination and do not suggest the RFC should have included additional work breaks or absences. Thus, the ALJ's assessment of Dr. Schilling's and Dr. Clay's opinions did not constitute reversible error.

Ms. Rivers also argues the opinions of her treating providers at Lakeview Center supported the inclusion of additional work breaks or absences in the RFC assessment and the ALJ erred by discounting the treating providers' opinions. (Doc. 15, p. 10-15). Absent good cause, the opinion of a treating physician must be accorded considerable or substantial weight by the Commissioner. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004). "Good cause" exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241.

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight. *See* 20 C.F.R. § 416.927(c)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the opinion based on: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the

opinion; (4) the consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion. *See* 20 C.F.R. § 416.927(c)(2). "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 357 F.3d at 1241. "[F]ailure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (*citing MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).

The ALJ gave "little" to "no" weight to the Treating Source Mental Status Report from Lakeview Center, stating:

> The psychiatrist noted good concentration and no abnormal behaviors but still stated that the claimant's mood "may" keep her from completing a normal workweek. Thus, by definition, this is mere speculation that an event "may occur" and as such, it cannot be given weight. Further, the remainder of the opinion gives no reason for any restriction as the claimant is oriented, able[] to handle money, etc. The [ALJ] affords this opinion no weight because it is internally inconsistent and not supported by evidence.[6]

T. 27.

Ms. Rivers faults the ALJ for characterizing the Report as speculative based on the Report's use of the word "may." (Doc. 15, p. 10-11). Plaintiff notes the ALJ assigned Dr. Schilling's and Dr. Clay's opinions great weight despite those opinions'

---

[6] The Commissioner argues the Lakeview Center opinion should not be considered an "acceptable medical source" because the signature on the opinion is illegible and the source of the opinion is not otherwise identified. (Doc. 16, p. 11). Because the ALJ indicated the opinion was authored by a "treating psychiatrist," T. 27, the court will analyze it as such.

use of the same term. (*Id.*). Nevertheless, even assuming the ALJ's consideration of the term "may" in the different opinions is irreconcilable, the observation that the Treating Source Mental Status Report is internally inconsistent is supported by substantial evidence and independently provides good cause for rejecting it.

In response to the question, "Is this individual capable of sustaining work activity for eight hours a day, five days a week?," the unidentified psychiatrist stated claimant's "mood disability may enable her from completing a normal work week despite medication management." T. 686. In contrast to this perhaps inartful response, the remainder of the opinion indicated plaintiff: (1) was "goal directed & organized"; (2) had "no overt psychotic symptoms"; (3) had "good" concentration; (4) was "alert & oriented times three"; (5) had "good" immediate, recent, and remote memory; (6) denied hallucinations and perceptual disturbances; (7) exhibited no abnormal behaviors; (8) was competent to independently manage funds/benefits; and (9) had "fair cognitive ability." T. 685-86. These responses as to specific signs, symptoms, and limitations indicate the ALJ's decision not to include additional absences or breaks in the RFC was reasonable.

Furthermore, the ALJ alluded to the conclusory nature of the psychiatrist's Report. T. 27 ("[T]he remainder of the opinion gives no reason for any restriction as the claimant is oriented, able[] to handle money, etc.). If the psychiatrist concluded claimant was not "capable of sustaining work activity for eight hours a

day, five days a week," the Report specifically asked the psychiatrist to "explain why using examples of behavioral objective data." T. 686. The psychiatrist, however, only referred to claimant's "mood disability" and did not cite any "examples of behavioral objective data." T. 686. Thus, the conclusory nature of the Treating Source Mental Status Report also supports the ALJ's decision to reject it. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) ("A treating physician's report 'may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.'") (*quoting Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991)).

Ms. Rivers also argues the Physical Capacities Evaluation form completed by Nurse Javier undermines the ALJ's decision because Javier concluded claimant would be absent from work 4 days per month. T. 831. The ALJ rejected this portion of Nurse Javier's opinion:

> Ms. Javier also stated that the claimant would be absent four days a month and she is only able to lift five to ten pounds. This opinion is given little weight, as it is not consistent with the other mild findings. Additionally, as to "missing work four days per month" I give this no weight because (1) there is no indication the claimant has "worked" at any time while seeing Ms. Javier so this is just speculation; and (2) there is no evidence Ms. Javier has any vocational training with which to render an opinion regarding vocational issues.

T. 26-27.

Plaintiff argues that no provision of Social Security law requires medical sources to have vocational training before the ALJ gives the source's opinion weight

as to a claimant's functional limitations.[7] Plaintiff notes the ALJ gave the opinions of Drs. Schilling and Clay great weight and there is no evidence these doctors have any vocational training.

Plaintiff's argument is unpersuasive. As a nurse, Javier is not considered an "acceptable medical source." *See* 20 C.F.R. § 416.913(a); *cf. Miles v. Soc. Sec. Admin., Comm'r*, 469 F. App'x 743, 745 (11th Cir. 2012) ("[A]n ALJ has no duty to give significant or controlling weight to a chiropractor's views because, for SSA purposes, a chiropractor is not a 'medical source' who can offer medical opinions."). In contrast, Drs. Schilling and Clay "are highly qualified . . . psychologists . . . who are also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(i). Nurse Javier's opinion, however, may be used to show the severity of claimant's impairments and is evaluated in the same manner as an "acceptable medical source." *See* 20 C.F.R. § 416.913(d); SSR 06-03P 2006 WL 2329939 at *4-5 (noting factors used to evaluate opinions of "acceptable medical sources" apply to opinions from "other sources").

Nevertheless, as the ALJ noted, Nurse Javier's opinion was "not consistent with the other mild findings." T. 26. Nurse Javier completed a form indicating

---

[7] Ms. Rivers asserts the ALJ's rejection of Nurse Javier's opinion based on plaintiff's lack of employment is "illogical." (Doc. 15, p. 11-12). The undersigned agrees the fact claimant did not work while Nurse Javier provided treatment does not necessarily undermine the nurse's opinion concerning potential work absences. Regardless, the ALJ had good reasons for giving this portion of Nurse Javier's opinion no weight.

claimant had, at most, mild "psychiatric/psychological impairment[s]."[8]  T. 828-30. Of note, Javier indicated claimant would experience: (1) no impairment in the "ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances;" and (2) mild "impairment of [her] ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  T. 829.  In the "comments" section of the form, Nurse Javier wrote: "Related to [history] of [cerebrovascular accident.] Mild physical/psychological restriction present.  But client is fully functional[.]  No pscyche issues[.]  Able to focus fully and care for one['s] self[.]  She has a church community that supports her financial [and] medical needs."  T. 830.  This description of claimant's condition is inconsistent with the conclusion that she would miss 4 days of work per month and provides good cause for rejecting the portion of Nurse Javier's opinion concerning work absences.  Furthermore, Javier articulated no specific explanation for concluding Ms. Rivers would miss 4 days of work per month and, without a medical justification, this observation sounds more like a vocational assessment than a medical opinion.

---

[8] The form defined "mild" as a "suspected impairment of slight importance which does not affect [the] ability to function."  T. 828.

In addition, the suggestion that plaintiff's impairments should have resulted in a more restrictive RFC is contradicted by evidence showing her mental condition was controlled with medication, and by her activities of daily living. *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) ("The regulations do not . . . prevent the ALJ from considering daily activities at the fourth step of the sequential evaluation process."); *Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("[A]n ALJ may consider household and social activities in evaluating complaints of disabling pain."); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012) ("When evaluating a claimant's statements regarding [her] symptoms and their functional effects, the ALJ may consider whether the level or frequency of treatment is consistent with the level of complaints.") (*citing* S.S.R. 96-7p at *7).  After a brief hospitalization, Ms. Rivers was discharged from Lakeview Center on May 29, 2014, and Cynthia Javellana, M.D., noted claimant felt "perfect" and reported medication had "been helping her."[9] T. 979-80.  On September 11, 2014, Brian Braumiller, D.O., noted plaintiff was "still a little anxious during the day," but she was "doing really well on her medication" and her "thought content [was] coherent, without signs [of] psychosis."  T. 1151.

---

[9] Ms. Rivers stated "that she came in [for treatment] basically to have a break from her family, and also to have her medication adjusted[.]"  T. 979.

With respect to claimant's activities of daily living, the ALJ specifically observed that claimant played bingo, which "requires the ability to understand, remember and carry out simple tasks." T. 27, 61-62, 888. Plaintiff also reported she could go shopping with her family, watch movies, and pay bills and count change "if somebody [was] with [her]." T. 278-79. These activities also provide support for the ALJ's RFC determination.

Based on the foregoing, the ALJ did not err when evaluating the various opinions in the record and the decision to deny the application for SSI is supported by substantial evidence. Ms. Rivers has failed to show the ALJ committed reversible error under the well-known standard of review. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]. Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence.").

Accordingly, it is respectfully RECOMMENDED:

1.     That the decision of the Commissioner be AFFIRMED and plaintiff's application for Supplemental Security Income be DENIED.

2.     That the clerk be directed to close the file.

At Pensacola, Florida, this 15th day of June, 2017.

*/s/* *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.

Case No. 3:16cv333-MCR-CJK